873 So.2d 789 (2004)
STATE of Louisiana
v.
Courtney D. PACKNETT.
No. 03-KA-1446.
Court of Appeal of Louisiana, Fifth Circuit.
April 27, 2004.
*790 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Assistant District Attorney, Gretna, LA, for Plaintiff/Appellee.
Bruce G. Whittaker, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., MARION F. EDWARDS and SUSAN M. CHEHARDY.
MARION F. EDWARDS, Judge.
Defendant, Courtney Packnett, appeals his sentence following a conviction under LSA-R.S. 40:981.3. For the following reasons, defendant's sentence is affirmed, and we further remand the case to the trial court to correct errors patent on the face of the record.
On July 25, 2002, the Jefferson Parish District Attorney filed a bill of information charging defendant, Courtney Packnett, with distribution of cocaine within one thousand feet of Saint Joseph the Worker Church. Packnett was arraigned on July 26, 2002, and pled not guilty. On December 19, 2002, the state amended the petition to add two additional sites: Saint Joseph the Worker School and Ames Elementary School. Packnett was arraigned on the amended charge that day and pled not guilty.
Packnett was tried by a twelve-person jury on January 14 and 15, 2003. At the conclusion of trial, the jury rendered a verdict of guilty as charged. On February 13, 2003, defense counsel filed a Motion for New Trial Alternatively Motion to Arrest Judgment. Packnett argued in his motion that the verdict was contrary to the law and evidence, as the evidence at trial was insufficient to support his conviction. On February 13, 2003, the trial court denied Packnett's motion.
Packnett waived statutory delays and the court sentenced him that day to ten years at hard labor, ordering that the first two years be served without parole, probation, or suspension of sentence. The court also imposed a fine of $50,000. The state *791 thereafter filed a habitual offender bill of information, alleging Packnett to be a fourth felony offender. Defendant was apprised of allegations in the bill, and entered a denial. Packnett filed a written response to the state's allegations on February 26, 2003.
Packnett filed a motion for appeal on February 13, 2003. The court granted the motion on March 12, 2003. Defendant's counsel filed a Motion to Reconsider Sentence on February 20, 2003. The court denied the motion without hearing on March 12, 2003. On March 3, 2003, defendant filed, in proper person, a Motion to Arrest the Judgment. There is no evidence in the record that the court ruled on the pro se motion.[1]
On April 11, 2003, the state filed a revised habitual offender bill of information. The new bill was the same as the original in all respects, except that one of the predicate convictions alleged in the original was replaced by a different conviction. Packnett filed a written response to the revised habitual offender bill on July 23, 2003.
Judge Melvin Zeno recused himself from defendant's case. On May 9, 2003, the case was transferred from Judge Zeno's court to Judge Ross LaDart's court.
On June 2, 2003, Packnett's newly obtained defense counsel reasserted previous counsel's motion to reconsider sentence. The judge denied the motion that day. On June 13, 2003, defendant filed a Motion to Appoint Sanity Commission to Determine Defendant's Competency to Stand Trial, arguing he was not competent to assist counsel. On June 16, 2003, the trial court granted the motion and appointed a sanity commission. On July 23, 2003, the court found Packnett competent to proceed.
The court held a habitual offender hearing on September 30, 2003, and found Packnett to be a fourth felony offender. The court vacated Packnett's original sentence, and imposed an enhanced sentence of thirty-six years at hard labor. The court further ordered that the sentence run consecutively to any other sentences defendant was serving. On October 2, 2003, defense counsel filed a Motion for Appeal and a Motion to Reconsider Sentence as to his habitual offender sentence. On October 7, 2003, Packnett filed a Motion to Reconsider Sentence, in proper person. The trial judge denied both motions to reconsider sentence on October 17, 2003. The judge granted defendant's appeal motion on the same day.
Agent Corey Wilson of the Jefferson Parish Sheriff's Office testified that the Narcotics Division received several complaints from residents regarding drug sales in the area of Ames Boulevard between Fourth Street and the Westbank Expressway in Marrero. In response to those complaints, Wilson sent Agent Allison Dugas to that area on the afternoon of March 1, 2002 to attempt undercover drug purchases.
Agent Dugas, who uses the name Megan Carter when working undercover, was assigned an unmarked police car equipped with video and audio recording equipment. The equipment allowed backup officers to monitor her actions. Agent Dugas was also given currency with prerecorded serial numbers with which to make drug purchases.
Agent Dugas testified that at 1:50 p.m., she was inside of her vehicle in the parking lot of the St. Joseph the Worker School/Church complex. The property was designated as a drug-free zone. She was positioned one hundred eighty-seven feet from *792 Ames Elementary School. She purchased a rock of crack cocaine for twenty dollars from defendant, Courtney Packnett. Agent Wilson and other surveillance officers were in the area, but were not in a position to see the transaction. The entire transaction was, however, recorded on videotape.
Upon completing the transaction, Agent Dugas met with Agent Wilson. She gave him an off-white rock. Dugas gave Wilson a description of the man from whom she had purchased the rock. Wilson located the man twenty to thirty minutes later, and conducted a field interview with him. The man identified himself as Courtney Packnett. Wilson completed a field interview card with defendant's personal information. Agent Wilson testified that he conducted a pat-down search of defendant's outer clothing for his own safety. Wilson stated that a pat-down is routine procedure during a field interview. According to Wilson, Packnett removed the contents of his pockets and put his belongings on the officer's car. Among those items was one of the marked twenty-dollar bills given to Dugas earlier that day. Agent Wilson performed a field test on the rock Dugas had purchased. The result was positive for cocaine.[2]
Based on the information he received from Agent Dugas and from defendant, Agent Wilson compiled a photographic lineup. At 3:45 p.m. on March 1, 2002, Agent Wilson presented the lineup to Agent Dugas. Dugas identified Packnett as the person from whom she had purchased the cocaine. Dugas also identified Packnett in court as the person who had sold her the cocaine. Wilson testified that Packnett's arrest was delayed until a later date so that the nature of the undercover investigation would not be exposed.
In his first assignment of error, Packnett complains that his thirty-six year-enhanced sentence is constitutionally excessive, arguing that he has no record of violent offenses. Packnett raised the issue of excessiveness in his counseled Motion to Reconsider Sentence, which was filed on October 2, 2003 and denied on October 17, 2003.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit imposition of excessive punishment. A sentence is constitutionally excessive, even if it is within statutory limits, if it is grossly disproportionate to the severity of the offense or is nothing more than the needless and purposeless imposition of pain and suffering.[3] Trial judges are granted great discretion in imposing sentence, and if the record supports the sentence imposed, the court of appeal will not set it aside on grounds of excessiveness.[4] Factors an appellate court may consider in reviewing the sentencing judge's discretion are: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts.[5] A sentencing judge may consider a defendant's prior *793 convictions as well as past criminal behavior that did not result in a conviction.[6]
As a fourth offender, Packnett was subject to a sentencing range of twenty years to life imprisonment, pursuant to LSA-R.S. 40:967(B)(4)(b), 40:981.3(E), and 15:529.1(A)(1)(c)(i).[7] We first note that Packnett's sentence is less than the maximum term (forty-five years) to which he would have been exposed as a first-time offender under LSA-R.S. 40:981.3. Judge LaDart did not give reasons at the time of the habitual offender sentencing. Since Judge LaDart did not impose Packnett's original sentence, his impressions of defendant's criminal history cannot be gleaned from a reading of that proceeding. However, after a review of the record, we find that the record, as a whole, supports the sentence imposed.
Defendant's claim that his record does not classify him as a violent offender is unfounded. Two of the three predicate convictions alleged in the habitual offender bill were for theft, a non-violent crime. In fact, one of those convictions was for theft between one hundred and five hundred dollars. In 1998, when defendant committed the offense, it was a felony.[8] Today, under LSA-R.S. 14:67(B)(3), theft involving less than three hundred dollars is a misdemeanor. However, one of defendant's predicate convictions is possession of a firearm by a convicted felon, LSA-R.S. 14:95.1, which indicates a propensity for carrying weapons.
Most importantly, there is mention in the proceedings leading up to the habitual offender hearing of a second degree murder charge pending against the defendant in Judge LaDart's court. As discussed above, a sentencing judge may consider a defendant's past criminal behavior even if it did not lead to a conviction. The state also made the trial court aware of a burglary conviction that was not included as a predicate in the habitual offender bill of information.
Based on the foregoing, we find that the trial court did not abuse its discretion in sentencing defendant.
In his second assignment of error, Packnett assigns as error all errors patent. We reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux,[9] and State v. Weiland.[10] The following errors are noted.
LSA-R.S. 15:529.1(D)(1)(a) requires that a defendant be advised of the specific allegations contained in the habitual offender bill of information and his right to a formal hearing at which the state must prove the defendant's habitual offender status. Implicit in this provision is the additional requirement that the defendant be advised of his constitutional right to remain silent.[11] The trial court held an admit/deny hearing as to the state's original habitual offender bill of information, at which time the judge advised defendant of his right to a formal hearing and his right to remain silent. The record does not show that the court held an admit/deny *794 hearing as to the revised habitual offender bill of information. There is nothing in the record, however, to show that Packnett objected to the court's failure to apprise him of the amended allegations. Moreover, the fact that Packnett filed a written response to the revised bill is indication that he was aware of the amended allegations.
This Court has previously held that a defendant waives his right to admit or deny the allegations in the habitual offender bill when he proceeds to the habitual offender hearing without objecting.[12] Therefore we find hat no corrective action is required on this error patent.
We note that the habitual offender commitment shows that the court imposed sentence without benefit of parole, probation or suspension of sentence. First, the restriction of benefits as stated in the commitment does not properly track LSA-R.S. 40:967(B)(4)(b), which only requires that the first two years of the sentence be served without benefits.[13] While LSA-R.S. 15:529.1(G) requires that defendant's entire sentence be served without benefit of probation or suspension of sentence, the cocaine statute only bars defendant from parole eligibility for the first two years of the sentence. We further note that the transcript does not show that the court imposed any restrictions on the habitual offender sentence. In general, where the minute entry and the transcript conflict, the transcript controls.[14]
Under LSA-R.S. 15:301.1(A) and the rationale in State v. Williams,[15] the restriction of benefits is self-activating. We therefore order the trial court to amend the habitual offender commitment to show that defendant's enhanced sentence is to be served without benefit of probation or suspension of sentence and that the first two years of his sentence is to be served without benefit of parole.
As previously mentioned, while the trial court ruled on the counseled motion in arrest of judgment, there is no evidence in the record that the trial court ruled on defendant's pro se Motion to Arrest the Judgment. Packnett argued in that motion that he was a victim of police entrapment, and that his attorney failed to properly advise him regarding that issue. Defendant further argued that his trial counsel was ineffective in failing to consult him regarding trial strategy. Those issues, however, are not included in the grounds for arrest of judgment allowed under LSA-C.Cr.P. art. 859. Moreover, the record reflects that Packnett's motion was not timely filed. LSA-C.Cr.P. art. 861 provides that "[a] motion in arrest of judgment must be filed and disposed of before sentence." Defendant's original sentencing was on February 13, 2003, and he did not file the motion until March 3, 2003. Therefore we find that no corrective action is necessary.
We also note that defendant may raise his ineffective assistance of counsel claim on application for post-conviction relief.
*795 For the foregoing reasons, the defendant's sentence is affirmed, and we further remand this case to the trial court to amend the habitual offender commitment to show that defendant's enhanced sentence is to be served without benefit of probation or suspension of sentence and that the first two years of his sentence is to be served without benefit of parole.
AFFIRMED, REMANDED WITH INSTRUCTIONS.
NOTES
[1] This fact is discussed in our errors patent review, post.
[2] At the beginning of trial, the attorneys entered into a stipulation that, if Daniel Waguespack were to testify, he would be qualified as an expert witness in the field of forensic chemistry and would testify that he had tested State's Exhibit 1 and found it to be cocaine.
[3] State v. Page, 02-689, p. 21 (La.App. 5 Cir. 1/28/03), 837 So.2d 165, 179, writ denied, 03-0951 (La.11/7/03), 857 So.2d 517.
[4] LSA-C.Cr.P. art. 881.4(D); State v. Richmond, 98-1015, p. 8 (La.App. 5 Cir. 3/10/99), 734 So.2d 33, 38.
[5] State v. Harris, 02-1048, pp. 3-4 (La.App. 5 Cir. 2/25/03), 841 So.2d 1005, 1007, writ denied, 03-0742 (La.9/19/03), 853 So.2d 637.
[6] State v. Anderson, 02-273, p. 7 (La.App. 5 Cir. 7/30/02), 824 So.2d 517, 522, writ denied, 02-2519 (La.6/27/03), 847 So.2d 1254.
[7] The Louisiana Supreme Court has held that the applicable sentencing scheme is the one in effect at the time the offense is committed. State v. Sugasti, 01-3407 (La.6/21/02), 820 So.2d 518, 521.
[8] See the former LSA-R.S. 14:67(B)(2).
[9] 312 So.2d 337 (La.1975).
[10] 556 So.2d 175 (La.App. 5 Cir.1990).
[11] State v. Johnson, 432 So.2d 815, 817 (La. 1983); State v. Walker, 01-348, p. 5 (La.App. 5 Cir. 8/28/01), 795 So.2d 459, 463, writ denied, 01-2788 (La.10/4/02), 826 So.2d 1115.
[12] State v. Jerome, 03-126, p. 3 (La.App. 5 Cir. 4/29/03), 845 So.2d 1194, 1196.
[13] When a defendant is sentenced as a habitual offender, "[t]he penalty increase is computed by reference to the sentencing provisions of the underlying offense. Similarly, the conditions imposed on the sentence are those called for in the reference statute." State v. Fletcher, 03-60, p. 13 (La.App. 5 Cir. 4/29/03), 845 So.2d 1213, 1222, quoting State v. Bruins, 407 So.2d 685, 687 (La.1981). LSA-R.S. 40:981.3(E) also requires reference to the sentencing provisions in LSA-R.S. 40:967(B).
[14] State v. Lynch, 441 So.2d 732 (La.1983).
[15] 00-1725 (La.11/28/01), 800 So.2d 790.